UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LYNN M. COLLUMBIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-CV-00172 JAR |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Lynn Collumbien's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.

**I.    Background**

Plaintiff applied for benefits under Title II of the Social Security Act on February 16, 2017, alleging disability as of September 1, 2014 due to fibromyalgia, hidradenitis suppurativa ("HS")[1], irritable bowel syndrome ("IBS"), chronic fatigue, autoimmune disease, methicillin-resistant staphylococcus aureus ("MRSA"), and depression. Plaintiff testified she is unable to work because of painful skin lesions from HS, as well symptoms from chronic fatigue and connective tissue disorder. (Tr. 62-63). After her application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on January

---

[1] HS is a skin condition that causes small, painful lumps to form under the skin. (Plaintiff's Statement of Material Facts (Doc. No. 7), at ¶ 29).

23, 2019, the ALJ issued a written decision on March 27, 2019 denying Plaintiff's application. Plaintiff's request for review by the Appeals Council was denied on December 26, 2019. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II.      Facts

The Court adopts Plaintiff's Statement of Material Facts (Doc. No. 7) to the extent they are admitted by the Commissioner (Doc. No. 8-1). The Court also adopts Defendant's Additional Material Facts. (Id.). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III.     Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's

2

decision only if it falls outside the available zone of choice." <u>Papesh v. Colvin</u>, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. <u>Id</u>. The Court defers heavily to the findings and conclusions of the Social Security Administration. <u>Wright v. Colvin</u>, 789 F.3d 847, 852 (8th Cir. 2015) (quoting <u>Hurd v. Astrue</u>, 621 F.3d 734, 738 (8th Cir. 2010)).

 To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

<u>Brand v. Sec'y of Dept. of Health, Educ. & Welfare</u>, 623 F.2d 523, 527 (8th Cir. 1980); <u>see also</u> <u>Stamper v. Colvin</u>, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

 The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained

4

work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091-92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); see also Stamper, 174 F. Supp. 3d at 1063.

## IV.    Decision of the ALJ

The ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2018, and that she did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2014, through her date last insured of December 31, 2018. (Tr. 17). The ALJ found that through the date last insured, Plaintiff had the

5

severe impairments of HS and connective tissue disease[2], but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-22).

After considering the entire record, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b), except that she can occasionally reach overhead bilaterally and must avoid even moderate exposure to wetness and humidity. (Tr. 22).

Based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing past relevant work as a receptionist, a job characterized as semi-skilled/skilled at (SVP 4) and performed at a sedentary exertional level. (Tr. 28-29). Alternatively, after considering Plaintiff's age, education, work experience and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can also perform, such as Office Helper: Dictionary of Occupational Titles (DOT) No. 239.567-010, SVP 2, light work, with approximately 157,000 jobs nationally; Cashier: DOT No. 211.462-010, SVP 2, light work, with approximately 1,000,000 jobs nationally; and Cleaner: DOT No. 323.687-014, SVP 2, light work, with 445,000 jobs nationally. (Tr. 28-30). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 31).

V.     Discussion

Plaintiff raises two issues on appeal. First, Plaintiff argues the ALJ failed to fully and fairly develop the record. (Doc. No. 6 at 3-8). In particular, she contends there is no medical evidence that addresses her ability to function in the workplace. Second, Plaintiff argues the ALJ failed to

---

[2] The ALJ found Plaintiff's alleged impairments of asthma, GERD/irritable bowel syndrome, hypertension, morbid obesity, depressive disorder, and generalized anxiety disorder, to be non-severe impairments. (Tr. 18-20). The ALJ further found Plaintiff's fibromyalgia, chronic fatigue and obstructive sleep apnea were not medically determinable impairments. (Tr. 20-22).

properly evaluate Listing 8.06. (Id. at 9-10). The Commissioner responds that substantial evidence supports the ALJ's assessment of Plaintiff's symptoms (Doc. No. 8 at 4-6) as well as the RFC determination (id. at 6-7).

### A.  Failure to develop the record

Plaintiff first argues the ALJ failed to develop the record fully and fairly. Specifically, Plaintiff maintains there is no medical evidence of record supporting the ALJ's RFC for light work except that she could occasionally reach overhead bilaterally. Plaintiff asserts the ALJ should have developed the record regarding her ability to function in the workplace by contacting one of her treating physicians or by obtaining the services of an expert to review the record during the period of disability. The Court is not persuaded by Plaintiff's argument.

There is no requirement that an RFC finding be supported by a specific medical opinion. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016); see also Myers v. Colvin, 721 F.3d 521, 526-27 (8th Cir. 2013); Beatty v. Saul, No. 2:18 CV 22 ACL, 2019 WL 4243087, at *9 (E.D. Mo. Sept. 6, 2019). Rather, the RFC is an administrative finding based on all the relevant evidence of record. See 20 C.F.R. § 404.1245(a); 20 C.F.R. § 404.1546(c). Where the record is sufficient to support the ALJ's decision, the ALJ is not required to develop the record further. See Johnson v. Astrue, 627 F.3d 316, 320 (8th Cir. 2010). See also Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) (quoting Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."). As discussed below, the record as a whole provided a sufficient basis for the ALJ's decision and there was no indication in the record that additional medical records were necessary. See Hensley, 829 F.3d at 932 ("medical records

7

prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's [RFC] findings.").

A claimant's RFC is the most she can still do despite her physical or mental limitations. Leckenby v. Astrue, 487 F.3d 626, 631 n. 5 (8th Cir. 2007). Although some medical evidence must support an RFC, see Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008), it is not the only evidence an ALJ considers. An ALJ determines a claimant's RFC based on all the relevant, credible record evidence, including a claimant's medical records, observations from treating physicians and others, and a claimant's subjective statements. Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)); see also Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012).

**Medical records**

When evaluating Plaintiff's RFC, the ALJ thoroughly discussed the medical evidence from several providers. (Tr. 24-28). For example, the ALJ discussed medical records from Plaintiff's hospitalization on July 14, 2015 for early abscess on the maxillary area showing Plaintiff had 5/5 muscle strength in the upper and lower extremities and skin otherwise intact. (Tr. 25, 232). Plaintiff was discharged on July 16, 2015 in stable condition and instructed to follow up with her primary care doctor, Van A. Hargraves, M.D. No restrictions in activity were noted and Plaintiff was encouraged to lose weight. (Tr. 231). The next day, Plaintiff reported to Dr. Hargraves that the cellulitis was worse and had spread to her chin. (Tr. 354). Dr. Hargraves directed Plaintiff to call the ENT specialist she had seen at the hospital or go the emergency room if her symptoms worsened. (Id.). Plaintiff did not call the ENT or go to the emergency room. By the time Plaintiff saw Dr. Hargraves again on July 29, 2015, her symptoms had resolved completely. (Tr. 353). Upon examination, her gait and extremities were normal, and her skin was clear. (Tr. 354). The ALJ

correctly noted that following Plaintiff's hospitalization in July, the records document a break in treatment and no more hospitalizations for complaints or complications arising from HS or connective tissue disease. (Tr. 25).

Plaintiff returned to Dr. Hargraves on January 7, 2016. (Tr. 351). She had a sore in her right nostril and was started on antibiotics. (Id.). On February 23, 2016, Dr. Hargraves noted Plaintiff's complaints of rash under her arm. She had eight erythemic[3] lesions under her arm that were tender to the touch and one lesion draining clear fluid. (Tr. 349). Plaintiff was diagnosed with a staph infection and prescribed Clindamycin and Mupirocin ointment. (Tr. 25, 349). In May 2016, Plaintiff presented to Dr. Hargraves with complaints of a sore in her left nostril that she believed was a recurrence of MERSA. (Tr. 340). There was mild swelling to the left side of her face. She was prescribed Bactroban and Clindamycin and referred to an infectious disease specialist. (Id.).

The ALJ noted a lack of documentation from an infectious disease specialist or other provider after May 31, 2016 through August 26, 2016, when Plaintiff returned to Dr. Hargraves. (Tr. 26). At that time, Plaintiff was in no distress. She had a normal range of motion in her joints and a normal/stable gait. Her skin was also normal with no rash. (Tr. 337). She was counseled on incorporating a healthy lifestyle, including regular exercise and a low cholesterol, low salt, and low-fat diet. (Id.). In December 2016, Plaintiff presented with tender, erythemic lesions under both armpits and was prescribed Bactrim. (Tr. 333). As the ALJ correctly noted, Plaintiff had been directed to follow up with an infectious disease specialist on several occasions but had not done so. (See Tr. 26-27, 333-34, 336, 338, 340).

---

[3] Erythema is redness of the skin caused by dilatation and congestion of the capillaries, often a sign of inflammation or infection. https://medical-dictionary.thefreedictionary.com/erythemic (last visited Jan. 27, 2021).

The ALJ also discussed evidence from Otha Myles, M.D., an infectious disease specialist that Plaintiff began seeing in January 2017. (Tr. 53, 405). At that time, Plaintiff had multiple lesions in the armpit area and along her torso. (Tr. 405). The lesions were not tender or hot to the touch. Dr. Myles noted that MRSA screens done in March and April 2015 were positive but that screens done in July 2015, March 2016, April 2016, May 2016, and June 2016 were negative. (Tr. 404). Upon examination, Plaintiff's gait was normal, and no neurological deficits were noted. (Tr. 405). On March 27, 2017, Dr. Myles reported that Plaintiff's HS was stable and that she was not on antibiotics. (Tr. 401).

The ALJ correctly observed that Plaintiff's medical records do not document frequent flare-ups of symptoms related to HS or connective tissue disorder, or complications arising from HS, such as infection, scars, restrictive movement, obstructed lymph drainage, or cancer. (Tr. 27). Plaintiff was not routinely prescribed strong narcotic pain medication, and there were no physician findings of significant work-related limitations, lasting twelve consecutive months in duration. (Tr. 27-28). In fact, Plaintiff was routinely counseled on diet and daily exercise. (Tr. 28). As the ALJ's evaluation makes clear, Plaintiff's medical records fail to demonstrate that her HS causes serious limitations.

**Medical opinion evidence**

The record includes a Disability Determination Explanation prepared by Nancy Ceaser, M.D., and dated August 28, 2017. (Tr. 73-77). Dr. Ceaser noted Plaintiff had recurring abscess in axilla in March 2015, February 2016, and December 2016, but that those infections resolved within three months for each incident. (Tr. 73). Mild scarring in axillae was noted in December 2017. (Id.) In her assessment Dr. Ceaser stated, "[m]edical evidence does not show any of [Plaintiff's] conditions reach duration, and all appear to be under good control at present time. All are

10

considered non-severe." (Id.). Dr. Ceaser found Plaintiff's statements regarding her symptom-related limitations only partially credible based on the objective medical evidence, and that while Plaintiff's description of her functioning might be consistent during exacerbations of HS, these episodes do not last a full year. Moreover, there was no evidence of pain or restriction during periods of stability. (Tr. 76). The ALJ gave partial weight to Dr. Ceaser's finding that Plaintiff is not disabled but recognized that while the medical records do not establish treatment for frequent flare-ups of HS or connective tissue disease, these conditions remain and require a daily medication regimen. (Tr. 28).

The ALJ also considered a consultative examination of Plaintiff performed by Raymond Leung, M.D., in August 2017. Dr. Leung diagnosed mild scarring to the axillae secondary to hidradenitis, a history of MRSA, and morbid obesity at sixty and one-half inches (60.5) tall, weighing 231 pounds. Dr. Leung also noted Plaintiff's gait was within normal limits. She was able to tandem walk and hop, heel walk, toe walk, and squat, and all joints showed full range of motion. Plaintiff was able to move on and off the examination table without difficulty. Her leg and arm strength were 5/5 throughout. (Tr. 376-81).

**Subjective complaints**

In analyzing a claimant's subjective reports, the ALJ considers the entire record, including: medical records; statements from the claimant and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. §§ 404.1529, 416.929; Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The Court defers to the ALJ's assessment of the claimant's subjective complaints if that assessment is supported by good reasons and

substantial evidence. <u>Nash v. Comm'r, Soc. Sec. Admin.</u>, 907 F.3d 1086, 1090 (8th Cir. 2018). <u>See also</u> <u>Juszczyk v. Astrue</u>, 542 F.3d 626, 632 (8th Cir. 2008).

Here, the ALJ provided several valid and well-supported reasons for finding Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely consistent with the record evidence. First, as discussed in detail above, there is no medical evidence of record that Plaintiff had difficulty ambulating; upon examination, she consistently had a normal gait, with no difficulty walking, sitting or standing, and had full strength and range of motion in all extremities, even when she had a flare-up. (Tr. 27). Nevertheless, as the Commissioner points out, there is no dispute that Plaintiff has a history of lesions in her armpits, which the ALJ balanced with her normal motor examinations when finding she should be limited in overhead reaching. (Doc. No. 8 at 5 n.2).

Second, Plaintiff consistently failed to follow up with her provider's treatment recommendations, i.e., to consult with an infectious disease specialist. (Tr. 27, 28). Although not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem. <u>See</u> 20 C.F.R. §§ 404.1530(b), 416.930(b) (stating an unjustified failure to follow prescribed treatment is grounds for denying disability); <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."). Moreover, Plaintiff's HS appeared to respond to treatment and the record does not reflect side effects from medication. (Tr. 28). An impairment that is "controllable or amenable to treatment [does] not support a finding of total disability." <u>Bernard v. Colvin</u>, 774 F.3d 482, 488 (8th Cir. 2014).

**Listing 8.06**

In her second point on appeal, Plaintiff argues the ALJ failed to properly evaluate Listing 8.06. The ALJ found Plaintiff's condition did not meet or equal this Listing because the record did not show the requisite degree of severity. (Tr. 22).

Listing 8.06 is met when there is HS, with extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least three months despite continuing treatment as prescribed. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 8.06. Listing 8.06 includes three separate requirements. First the claimant must have extensive lesions. For purposes of Listing 8.06, Listing 8.00(C)(1) defines the term "extensive skin lesions" as "those that involve multiple body sites or critical body areas, and result in a very serious limitation." The Listing provides examples of extensive lesions, which include "lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity ...." and "lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate." 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 8.00(C)(1)(a), 8.00(C)(1)(c). Second, the lesions must be located on both axillae (armpits), both inguinal areas (groin), or the perineum (the area between the anus and the genitals). Third, the lesions must persist for at least three months despite continuing treatment. The Listing provides that "[b]y persist, we mean that the longitudinal clinical record shows that, with few exceptions, your lesions have been at the level of severity specified in the listing." 20 C.F.R., Pt. 404, Subpt. P, App.1 § 8 .00(G).

Plaintiff has presented medical evidence that she was diagnosed with HS and suffers from skin lesions in both of her armpits. To meet Listing 8.06, however, Plaintiff would have to present longitudinal clinical records showing that her lesions were at the required level of severity for at least three months, despite continuing treatment. As the ALJ's evaluation makes clear, Plaintiff's

medical records fail to demonstrate that her HS causes serious limitation in her joints, extremities, or ability to ambulate. The ALJ's evaluation of the medical evidence is wholly supported by substantial evidence. This explanation alone satisfies the ALJ's conclusion that Plaintiff's HS does not meet Listing 8.06. Further, Plaintiff provides no medical evidence that shows she has experienced persistent lesions for any three-month period of time in order to satisfy the durational requirement. Notably, Plaintiff's counsel conceded her breakouts don't last the three months required by Listing 8.06; rather, flareups typically last one month. (Tr. 50, 61).

In sum, there appears to be no supportive records beyond Plaintiff's testimony about the severity of her symptoms, which the ALJ found not entirely consistent with the medical evidence and other evidence of record, that her HS limits her ability to work, a burden squarely upon Plaintiff to prove. Kirby v. Astrue, 500 F.3d 705, 707-708 (8th Cir. 2007). To the contrary, many of the medical records show mild symptomology controlled through appropriate medical treatment. And none of the providers hint at impairments of any severity that would tend to limit Plaintiff's ability to work. For these reasons, the ALJ's conclusion that Plaintiff does not meet or equal Listing 8.06 is supported by substantial evidence.

**VI.     Conclusion**

The ALJ properly assessed Plaintiff's symptoms and determined that she has the RFC to perform light work with only occasional reaching overhead bilaterally. For these reasons, the Court finds the ALJ's decision is supported by substantial evidence on the record as whole, and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** without prejudice.

A separate Judgment will accompany this Memorandum and Order.

Dated this 4th day of March, 2021.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**